**Falk, Lauren N.**

| | |
|---|---|
| **From:** | Falk, Lauren N. |
| **Sent:** | Thursday, September 2, 2021 2:51 PM |
| **To:** | Caitlin Robin; 'Mark Laughlin' |
| **Cc:** | Young, Julie |
| **Subject:** | Zurich v. Melnicke Group, Case No. 21-4698; Waiver of Service of Summons |
| **Attachments:** | 2021-09-02 Ltr to Caitlin Robin re Waiver of Service of Summons.PDF |

Counsel,

Attached is a copy of the letter we sent to you today via Federal Express. Please let us know if you are authorized to execute the documents. Thank you.

Regards, Lauren

**Lauren N. Falk**
Associate
**Locke Lord LLP**
111 South Wacker Drive
Chicago, IL 60606
T: 312-443-0240
F: 312-896-6240
e-mail lauren.falk@lockelord.com
www.lockelord.com



111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Lauren N. Falk
Direct Telephone: 312-443-0240
Direct Fax: 312-896-6240
lauren.falk@lockelord.com

September 2, 2021

**VIA FEDERAL EXPRESS NEXT DAY**

Caitlin Robin
Mark Laughlin
Caitlin Robin and Associates PLLC
30 Broad St. Suite 702
New York, New York 10004

Re: *American Zurich Insurance Company v. Caton Park Nursing Home DBA Michael Melnicke, et al. (collectively, "Respondents")*, Case No.: 21-04698

Dear Caitlin and Mark:

Enclosed are copies of the Waiver of the Service of Summons and Petition to Confirm Arbitration Award in the captioned matter. We have also enclosed a self-addressed, prepaid envelope for the return of signed copies of the Waiver of the Service of Summons should you execute these waivers on behalf of Respondents.

Very truly yours,

LOCKE LORD LLP

Lauren N. Falk

Enclosures

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Northern District of Illinois

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 21-4698 |
| CATON PARK NURSING HOME DBA MICHAEL MELNICKE, ET AL. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: Julie L. Young and Lauren N. Falk
   *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____09/02/2021_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____          _____
*Printed name of party waiving service of summons*                    *Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In the Matter Of the Arbitration Between: | ) | |
| | ) | |
| AMERICAN ZURICH INSURANCE COMPANY, | ) | Case No. 21-4698 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CATON PARK NURSING HOME DBA MICHAEL MELNICKE; REGENCY EXTENDED MANAGEMENT LLC; HENDON GARDENS LLC DBA BEACH GARDENS REHAB AND NURSING CENTER; PARK NURSING HOME DBA PARK HOUSE CARE LLC; HEMPSTEAD PARK NURSING HOME DBA SUNSHINE CARE CORP; ROCKAWAY CARE CENTER LLC DBA ROCKAWAY CARE CENTER; PROVIDENCE CARE INC DBA BROOKLYN GARDENS NURSING AND REHABILITATION CENTER; YONKERS GARDENS LLC, | ) | |
| | ) | |
| Respondents. | ) | |

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner American Zurich Insurance Company ("Zurich") files this Petition to confirm the arbitration award entered against Respondents Caton Park Nursing Home DBA Michael Melnicke, Regency Extended Management LLC, Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center, Park Nursing Home DBA Park House Care LLC, Hempstead Park Nursing Home DBA Sunshine Care Corp, Rockaway Care Center LLC DBA Rockaway Care Center, Providence Care Inc DBA Brooklyn Gardens Nursing and Rehabilitation Center, and Yonkers Gardens LLC (collectively, "Melnicke Group"). Zurich alleges as follows:

## PARTIES

1.     Petitioner American Zurich Insurance Company is an Illinois corporation engaged in the insurance business with a statutory home office and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.

2.     Respondent Caton Park Nursing Home DBA Michael Melnicke is a New York limited liability company with its principal place of business in Brooklyn, New York.

3.     Respondent Regency Extended Management LLC is a New York limited liability company with its principal place of business in Edgemere, New York.

4.     Respondent Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center is a New York limited liability company with its principal place of business in Queens, New York.

5.     Respondent Park Nursing Home DBA Park House Care LLC is a New York limited liability company with its principal place of business in Rockaway Park, New York.

6.     Respondent Hempstead Park Nursing Home DBA Sunshine Care Corp is a New York limited liability company with its principal place of business in Hempstead, New York.

7.     Respondent Rockaway Care Center LLC DBA Rockaway Care Center is a New York limited liability company with its principal place of business in Far Rockaway, New York.

8.     Respondent Providence Care Inc DBA Brooklyn Gardens Nursing and Rehabilitation Center is a New York corporation with a principal place of business located in Brooklyn, New York.

9.     Respondent Yonkers Gardens LLC is a New York limited liability company with its principal place of business in Yonkers, New York.

2

10.     Upon information and belief, all members of the Respondent limited liability companies are citizens of New York, where they reside and maintain their principal places of business.

## JURISDICTION AND VENUE

11.     This is a proceeding to confirm an arbitration award arising under Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9.  Venue is proper under this Section because the arbitration is currently pending in this District pursuant to the parties' agreement to arbitrate, and the parties selected Chicago, Illinois as the venue for the arbitration.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## PETITION TO CONFIRM ARBITRATION AWARD

13.     Zurich and Melnicke Group entered into a written agreement in connection with an insurance policy that Zurich issued to Melnicke Group (the "Program Agreement").  A copy of the Program Agreement is attached as Exhibit 1.

14.     The Program Agreement contains an agreement to submit to arbitration any dispute arising out of the interpretation, performance, or alleged breach of the Program Agreement.  (*See* Ex. 1 at Z6.)

15.     In February 2021, Zurich demanded arbitration of a dispute that arose between the parties.  Through the arbitration, Zurich seeks to recover amounts that Melnicke Group owes Zurich under the Program Agreement.

3

16.     Pursuant to the arbitration agreement, Zurich appointed Edward Zulkey as an arbitrator.  Melnicke Group appointed Martin Scheinman as an arbitrator.  Mark Wigmore was then appointed as umpire in accordance with the terms of the arbitration agreement.

17.     In June 2021, Zurich requested that the arbitrators order Melnicke Group to post pre-hearing security for amounts that Zurich seeks to collect through the arbitration.  Melnicke Group opposed Zurich's request for pre-hearing security.

18.     On August 24, 2021, the arbitrators, having conferred on the arguments and evidence presented, awarded Zurich pre-hearing security in the total amount of $287,672.  A copy of the arbitrators' August 24, 2021 award is attached as Exhibit 2.

19.     The arbitration agreement provides that a court having jurisdiction may confirm an award made pursuant to the arbitration.  (*See* Ex. 1 at Z6.)

20.     Further, the parties arbitrated their disputes under the American Arbitration Association's Commercial Rules, as required by the Program Agreements.  Rule R-52 of the Commercial Rules states that "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

21.     As a result of the foregoing, Zurich is entitled to an order confirming the August 24, 2021 award pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9.  *See Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345 (7th Cir. 1994).

**WHEREFORE**, Zurich requests that:

1.     An order of this Court be made confirming the arbitrators' August 24, 2021 award;

2.     Judgment be entered in conformity with that order; and

4

3.      Zurich be awarded such other and further relief as the Court deems just and proper.


Dated:  September 2, 2021                          Respectfully submitted,

                                                  AMERICAN ZURICH INSURANCE
                                                  COMPANY

                                                  By:  /s/ *Lauren N. Falk*
                                                       One of Their Attorneys

Julie L. Young
Lauren N. Falk
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312.443.0240 (LNF)
Fax:    312.896.6240 (LNF)
jyoung@lockelord.com
lauren.falk@lockelord.com

# EXHIBIT 1

## PAID DEDUCTIBLE AGREEMENT

This Agreement, effective on the first day of October, 2018 between Caton Park Nursing Home DBA Michael Melnicke; Regency Extended Management LLC; Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center; Park Nursing Home DBA Park House Care LLC; Hempstead Park Nursing Home DBA Sunchine Care Corp; Rockaway Care Center LLC DBA Rockaway Care Center; Providence Care Inc DBA Brooklyn Gardens Nursing and Rehabilitation Center; Yonkers Gardens LLC (referred to as "You" and "Your") American Zurich Insurance Company (collectively] referred to as "We," "Us" and "Our").

### TERMS AND CONDITIONS

**A. Purpose of the Agreement**

The purpose of this Agreement is to outline (a) the scope, description and structure of the Deductible Program ("Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

**B. Scope of the Agreement**

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, subject to this Agreement are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program.

**C. Program Description**

Under the Program, We handle and pay the claims presented in accordance with the provisions of the Policy(ies) and bill You for the claim payments within the Deductible Amount(s), plus related expenses and assessments, as stated in the Specifications. You agree to and shall remit to Us all amounts when due, as stated in the Specifications. We hold a Loss Fund in an amount stated in the Specifications so that We do not use Our funds to pay Your obligations within the Deductible Amount(s).

As a consequence of providing You with a risk financing arrangement under this Program, We assume a financial risk for which We may require Collateral. The initial amount of the Collateral and how the amount may be adjusted is stated in the Specifications.

**D. Program Structure**

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the risk financing arrangement provided under the Program.

Z000001

As set out below in "Termination", if You Default, We may, at Our option, terminate the financing arrangements under the Program.  This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

**E.  Definitions**

1.  **Allocated Loss Adjustment Expense ("ALAE")** shall be defined in the Policy(ies).

2.  **ALAE Reserve** is Our evaluation of unpaid ALAE under the Policy(ies).

3.  **Aggregate Deductible** is the greatest amount You are obligated to reimburse Us under the Deductible Policy(ies) which shall apply as stated in the Specifications at each Loss Billing for the Program term stated in the Specifications.

4.  **Collateral** is a financial instrument provided by You to secure the deferral of Your financial obligations under the Program.

5.  **Deductible Amount(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Policy(ies).

6.  **Deductible Premium** is the amount paid by You to Us for the Program as set forth in the Policy(ies) and, for ease of reference, this/these amount(s) are restated in the Specifications..

7.  **Default** occurs when

    a.  You fail to pay any amount, including but not limited to the initial Loss Fund amount and subsequent adjustments, when it is due under any Agreement or any policy issued by Us to You,

    b.  You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You, or

    c.  You fail to provide the initial, adjusted, amendments to or replacement Collateral as required in this Agreement.

8.  **Due on Demand** is when a payment is due Us at the time the bill is presented to You.

9.  **Incurred ALAE ("IALAE")** is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

10.  **Incurred Loss ("IL")** is a Paid Loss plus a Loss Reserve under the Policy(ies).

11.  **Loss Based Assessment ("LBA")** is a state charge levied against losses.

12.  **Loss Development Factor ("LDF")** is a multiplier set by Us at Our sole discretion to evaluate (a) claims and related ALAE that have occurred but have not as yet been reported to You or to Us; and, (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to Us.  How and when the LDF is applied shall be as stated in the Specifications.

13.  **Loss Fund** is a non-interest bearing account where Your funds are held by Us to provide for the payment of Your obligations within the Deductible Amount(s) under the Policy(ies) prior to Your reimbursing Us.

14.  **Loss Reserve** is Our evaluation of the unpaid portion of a claim that has been previously reported to Us under the Policy(ies) and does not include ALAE Reserve.

15.  **Other Special Charges**  are (a) additional taxes, premium surcharges and premium and loss assessments incurred or paid by Us in connection with the Policy(ies); (b)

administrative, statutory or court-ordered fines or penalties incurred or paid by Us in connection with the Policy(ies) not the result of Our negligence; (c) any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement, except as provided for in Section O of the Terms and Conditions of this Agreement; and (d) any other charge, loss or expense paid or incurred by Us in connection with the Policy(ies) that does not constitute a loss payment under the Policy(ies), ALAE, Loss Based Assessments, Premium Tax, Premium Surcharges or payments to a TPA.

16. **Paid ALAE** is a payment made by Us for ALAE under the Policy(ies).

17. **Paid Loss** is a payment made by Us for a claim under the Policy(ies). Paid Loss does not include ALAE.

18. **Policy(ies)** shall mean those Policy(ies) stated in Section A of the Specifications.

19. **Premium Surcharges** are surcharges and assessments by federal, state, city, municipal or other governmental agencies or required by regulation or statute, that are levied on the basis of premiums and include new premium surcharges and assessments that are levied after the Specifications Effective Date and premium surcharges and assessments for which the rate or computation base changes after the Specifications Effective Date

20. **Premium Tax** includes state taxes and assessments that may be charged against the full state Standard Premium or the Deductible Premium.

21. **Recoveries** are that portion of any payment made under the Policy(ies) that We recover from anyone liable for the loss or from any workers compensation funds. The amount We recover will be applied as follows: (a) first, to any payments made by Us in excess of the Deductible Amounts; and, (b) then the remainder, if any, will be applied to reduce the Deductible Amounts reimbursable by You.

22. **Standard Premium** for Workers' Compensation and Employers' Liability (WC/EL) is calculated in accordance with the National Council on Compensation Insurance and/or specific state rules using Our manual rates times the exposure times the experience modification times schedule rating modification and/or deviations, if applicable. With respect to insurance coverages other than WC/EL, standard premium includes the premium We would charge for the Program term subject to the terms of the rating plan.

23. **Unallocated Loss Adjustment Expense ("ULAE")** includes expenses that are not directly allocated to a specific claim. The ULAE may be charged to You either by applying: (a) a **Loss Conversion Factor ("LCF")** that is a factor applied to the Paid or Incurred Loss, plus Paid or Incurred ALAE; or (b) a **Claim Handling Fee ("CHF")** that is a dollar amount charged per reported claimant, as stated in the Specifications.

**F. Payments Due**

The payments under this Program and the dates these amounts become due are stated in the Specifications. Each party to the Agreement agrees to remit all payments so that they are received on or before the due date. If any amount is payable and a specific due date is not stated, twenty (20) days from the date of billing will be the due date. You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

1. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.

2. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

## G. Loss Fund

The initial amount of the Loss Fund is stated in the Specifications. We reserve the right to adjust the amount of the Loss Fund at any time, but at a minimum, annually. The formula for adjustment of the Loss Fund amount is stated in the Specifications.

## H. Collateral

1. Required Letter of Credit

   On or before the Agreement effective date, You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months in the form provided by Us. The LOC must be from a bank which is and remains acceptable to Us and is and remains listed on the most current National Association of Insurance Commissioners ("NAIC") list of Acceptable Domestic Banks or U.S. Branches or U.S. Agencies of Acceptable Foreign Institutions ("Qualified Bank"). The LOC shall comply substantially with the requirements for LOCs under New York Insurance Regulation 133 and shall be acceptable to Us. We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used.

2. Computation, Adjustment, Amendment and Replacement of LOC

   a. Amounts

      The LOC amount shall be in an amount sufficient to secure Your financial obligations under this Agreement. Collateral requirements will be reviewed periodically and We reserve the right to adjust Collateral at any time We deem necessary to secure Your obligations to Us under the Program. The initial amount of the LOC and how it is adjusted are stated in the Specifications. You shall provide Us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

   b. Amendments

      Wording amendments requested by Us as a result of a bank error, a policy issuing company change, regulatory changes, or changes in New York Insurance Regulation 133 shall be provided by You within sixty (60) days of Our written or verbal request or not less than fifteen (15) days prior to the LOC expiration date, whichever is sooner.

   c. Nonrenewal of LOC

      If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior to its expiration You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to its expiration date.

   d. Issuing Bank Approval

      If the issuing bank is no longer acceptable to Us or a Qualified Bank, You shall provide Us with a replacement LOC in an equal or adjusted amount from a bank that is acceptable to Us and that is approved by the NAIC. You shall provide Us with the replacement LOC within thirty (30) days of Our request or not less than fifteen (15)

days prior to its expiration date, whichever is sooner.  The LOC must be in the form provided by Us.

3.  Draws on Collateral

    In the event of a Default, We reserve the right to a partial or full draw on any Collateral provided by You under the provisions of this Agreement or any other agreement between You and Us to pay any amount that is due or may become due as respects any one or more of the following obligations:

    a.  Any amount that is due or may become due under this Agreement;

    b.  Any amount due under any other agreement You, or any other named insured under the Policy(ies), have or may have with Us or any of Our affiliates.

    c.  Any amount that is due under any policy of insurance issued to You by Us or any of Our affiliates.

4.  Surrender of LOC

    Your duty to provide Collateral will continue until We determine that the Collateral under this Agreement is no longer required.  You understand and agree that this duty may continue even if this Agreement is terminated as provided for in Termination section of this Agreement or is otherwise cancelled.

## I.  Audit

An audit for the Policy(ies) stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies).  The adjustable elements of the Program will be adjusted based on the audited exposures as stated in the Specifications.

## J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law, all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision.  The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

## K.  Non-Waiver of Rights

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement.  The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

## L.  Changes in this Agreement

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

## M. Offset

The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

**N.  Reliance on Others**

You understand, acknowledge, and confirm that We did not offer advice to You concerning the proper financial, accounting, or tax treatment for the Policy(ies) and nothing herein should  be considered to constitute such advice.  You further represent that if accounting advice, tax advice, or other expert professional assistance is required, You will rely on Your own accountant, adviser, counsel, or other similar competent professional with expertise in the required area.

**O.  Arbitration**

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures:

1. Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA.  The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2. A panel shall be made up of three arbitrators.  Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator with a commercial liability insurance background who shall preside at the hearing.

3. If either party fails to appoint its arbitrator within thirty (30) days of the delivery of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the appointment notice date.

4. If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates with a commercial liability insurance background provided by the American Arbitration Association.  At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

Arbitration shall take place in Schaumburg, Illinois.

6. The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement.  Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages. Confirmation of the award may be entered in any court having jurisdiction.

7. Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding (except witnesses).  Each party shall pay its own costs of counsel and witnesses.

**P.  Termination**

This Agreement will terminate by mutual written consent.  We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy(ies) stated in the Specifications is canceled.   Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination.  It is understood and agreed by both parties that if billings are

suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses, provided the Aggregate Deductible, if any, has not been exhausted.

In the event of a mid-term termination of the Program, (a) the Agreement will follow the cancellation provisions of the Policy(ies), and (b) the calculation of the applicable Program elements, including but not limited to the minimum amounts for the Deductible Premium, Terrorism Premium, CAT Premium, and the Aggregate Deductible, if applicable, stated in the Specifications.

In the event of a Default or a material change in Your ownership, or if one of more of the Policy(ies) stated in the Specifications is canceled, We may, at Our option, terminate the financing portion of the Program.  The amount immediately due and payable to Us will be determined by Us using all of Your obligations under this Agreement calculated using the most recent incurred loss valuation times the applicable LDF determined by Us at Our sole discretion at the time of termination; in addition to the foregoing if termination is because of Your failure to pay any amount or provide any Collateral required under this Agreement, We may instead require, at Our option, payment of the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Policy(ies) effective date.

**Q. Governing Law And Jurisdiction**

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York without regard to its choice of law doctrine.

**Z000007**

The parties have caused this Agreement, effective as of the date first written above, to be executed by their duly authorized representatives.

**Caton Park Nursing Home DBA Michael Melnicke**

By: _____

Title: _____

Date: _____

**Regency Extended Management LLC**

By: _____

Title: _____

Date: _____

**Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center**

By: _____

Title: _____

Date: _____

**Park Nursing Home DBA Park House Care LLC**

By: _____

Title: _____

Date: _____

**Hempstead Park Nursing Home DBA Sunchine Care Corp**

By: _____

Title: _____

Date: _____

**Rockaway Care Center LLC DBA Rockaway Care Center**

By: _____

Title: _____

Date: _____

**Providence Care Inc DBA Brooklyn Gardens Nursing and Rehabilitation Center**

By: _____

Title: _____

Date: _____

**Yonkers Gardens LLC**

By: _____

Title: _____

Date: _____

**AMERICAN ZURICH INSURANCE COMPANY**

By: _____

Title: _AVP- Sr Underwriter_

Date: _11/26/18_

**SPECIFICATIONS TO PAID DEDUCTIBLE AGREEMENT**
**BETWEEN**
**Caton Park Nursing Home DBA Michael Melnicke; Regency Extended Management LLC;**
**Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center; Park Nursing Home**
**DBA Park House Care LLC; Hempstead Park Nursing Home DBA Sunchine Care Corp;**
**Rockaway Care Center LLC DBA Rockaway Care Center; Providence Care Inc DBA**
**Brooklyn Gardens Nursing and Rehabilitation Center; Yonkers Gardens LLC**
**AND**
**AMERICAN ZURICH INSURANCE COMPANY ("AZIC")**

**Specifications Effective Date 10/01/2018**

**A. Applicable Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC/EL | AZIC | WC 3492781 00 | 10/01/2019 |

**B. Deductible Amount(s)**

The following are the Deductible Amount(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1. The first $300,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2. The first $300,000 under WC coverage arising out of occupational disease payable to each affected employee.

3. The first $300,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4. The first $300,000 under EL coverage arising out of occupational disease payable to each affected employee.

5. With respect to 1 through 4 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

   ALAE is included within the Deductible Amount(s) under the Policy(ies) and is reimbursed to Us by You up to the Deductible Amount. We pay the ALAE excess of the Deductible Amount.

**C. Deductible Premium**

You are obligated to pay Us Deductible Premium. The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which is subject to adjustment. Adjusted Deductible Premium due is payable to Us at the time We issue the premium audit bill. In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

Z000009

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll including stop gap | $1.521271 Per $100 | $43,079,763 | $655,360 | $327,680 |

**D. Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)**

1. You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

2. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy.

3. Terrorism Premium will be adjusted by Us at the time We issue the premium audit bill.

   a. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

4. CAT Premium applies with respect to WC Policy(ies) only. CAT Premium will be adjusted by Us at the time We issue the premium audit bill. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

**E. Aggregate Deductible**

1. Aggregate Deductible

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Aggregate Deductible Amount | Estimated Exposure | Rate | Exposure Base | Aggregate Deductible Amount shall never be less than |
| $2,800,000 | $43,079,763 | $6.499571 per $100 | Audited Payroll including stop gap | $2,800,000 |

2. The most You are obligated to pay Us for the sum of Paid Losses within the Deductible Amount plus applicable Paid ALAE, or upon conversion, Incurred Losses within the Deductible Amount plus applicable Incurred ALAE, shall be no greater than the Aggregate Deductible.

3. Your obligation to pay Us for LCF on Paid Losses within the Loss Limit and applicable Paid ALAE, or Incurred Losses and applicable Incurred ALAE should the Loss Billings convert, plus LBAs, is in addition to the Aggregate Deductible amount. Loss Billings for these elements will cease once You have paid the Aggregate Deductible amount.

**F. Loss Based Assessments (LBAs)**

You are obligated to pay Us LBAs. At each Loss Billing, actual LBA charges will be computed by Us by multiplying WC Losses within the Deductible Amount(s) by the state LBA rate below. LBA charges within the Loss Billings shall continue until We suspend Loss Billings when all losses have been paid.

| State | Rate |
|-------|------|
| AK | 0.0600 |
| AL | 0.0055 |
| DC | 0.1090 |
| DE | 0.0500 |
| ID | 0.0160 |
| KS | 0.0354 |
| LA | 0.0760 |
| ME | 0.0072 |
| MI | 0.0150 |
| MS | 0.0183 |
| USL&HW* | 0.0670 |

* and extensions, as applicable

**G. Unallocated Loss Adjustment Expense (ULAE)**

At each Loss Billing, We will bill You the following LCF(s):

| Policy(ies) | LCF | Paid Loss Billing | Converted Loss Billing |
|-------------|-----|-------------------|------------------------|
| WC/EL | 1.05 | Paid Loss & Paid ALAE | Incurred Loss & Incurred ALAE |

**H. Loss Billings**

You are obligated to pay Us all Loss Billings.

You will be billed monthly following the effective date of the Deductible Policy(ies), for the following:

1. Paid Losses within the Deductible Amount(s) plus applicable Paid ALAE paid during the month,
2. less Recoveries within the Deductible Amount(s) credited during the month
3. times the LCF,
4. plus WC Paid Losses within the Deductible Amount(s) paid during the month times the state LBA

Paid Deductible Bundled Specifications          Page 3 of 6          4.1.16 Edition

Z000011

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii) the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications.

**I. Premium Surcharges and Other Special Charges**

1. Premium Surcharges

   You are obligated to pay Us Premium Surcharges in addition to the Deposit Premium. This sum is payable to Us as stated in the Policy(ies.)

   You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies). Premium Surcharges are subject to change without prior notice. Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

   You will be billed and are obligated to pay Us for additional Premium Surcharges which are due at the time We issue the premium audit billing. The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

2. Other Special Charges

   You are obligated to pay Us for Other Special Charges. You will be billed for Other Special Charges at the time We issue the premium audit billing unless otherwise required by law. We will provide You with information about the purpose of the charges and, as applicable, the amount of the charge and the application thereof. You will be billed based upon the information provided.

**J. Loss Fund**

| Loss Fund on Hand | $0 |
|---|---|
| Adjustment: | $50,000 |
| Required/Amended Loss Fund amount: | $50,000 |

1. You are obligated to provide the Required/Amended Loss Fund amount stated above which is due on or before the Specifications Effective Date.

2. Adjustment of the Loss Fund will be computed at a minimum annually after the Specifications Effective Date. We may adjust the Loss Fund at any time We determine the amount We require is greater than the Required/Amended amount stated above. Adjustments will be calculated and billed as follows:

   a. Paid Losses within the Deductible Amount(s) and applicable Paid ALAE for 12 months prior to the adjustment date,
   b. times the LCF
   c. plus WC Paid Losses within the Deductible Amount(s) times the applicable state LBA,
   d. divided by 12 equals the monthly average payment,
   e. monthly average payment times 2.5 equals the adjusted Loss Fund,
   f. Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

3. At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billings.

Z000012

When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

**K. Collateral**

| Collateral on hand: | $0 |
|---|---|
| Adjustment: | $1,325,000 |
| Required/Amended Collateral amount: | $1,325,000 |

The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date. Collateral requirements will be reviewed periodically and We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

The adjustment of the Collateral will include, but will not be limited to:

1. Incurred Losses within the Deductible Amount(s) plus applicable Incurred ALAE,
2. times the applicable LDF,
3. times the LCF,
4. plus the applicable LBA,
5. less the sum of amounts billed by Us for Loss Billings.

**L. Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You: Caton Park Nursing Home DBA Michael Melnicke
Address: 65 Ashburton Avenue
Yonkers, NY, 10701

Attention: Robert Shuck

Telephone: (718) 693-7000

If to Us: American Zurich Insurance Company,
Address: 4 World Trade Center
150 Greenwich Street
New York, NY 10007

Attention: GCiNA Casualty Regional Manager

Telephone: 212-553-5264

Z000013

The parties have caused the Specifications, effective 10/01/18 to be signed by their duly authorized representatives.

**Caton Park Nursing Home DBA Michael Melnicke**

By: _____

Title: _____

Date: _____

**Regency Extended Management LLC**

By: _____

Title: _____

Date: _____

**Hendon Gardens LLC DBA Beach Gardens Rehab and Nursing Center**

By: _____

Title: _____

Date: _____

**Park Nursing Home DBA Park House Care LLC**

By: _____

Title: _____

Date: _____

**Hempstead Park Nursing Home DBA Sunchine Care Corp**

By: _____

Title: _____

Date: _____

**Rockaway Care Center LLC DBA Rockaway Care Center**

By: _____

Title: _____

Date: _____

**Providence Care Inc DBA Brooklyn Gardens Nursing and Rehabilitation Center**

By: _____

Title: _____

Date: _____

**Yonkers Gardens LLC**

By: _____

Title: _____

Date: _____

**AMERICAN ZURICH INSURANCE COMPANY**

By: _____

Title: _Avp. Si Underwriter_

Date: _11/26/18_

Z000014

# EXHIBIT 2

## Falk, Lauren N.

| | |
|---|---|
| **From:** | AAA Shereen Gomez, Esq. <ShereenGomez@adr.org> |
| **Sent:** | Tuesday, August 24, 2021 4:25 PM |
| **To:** | Falk, Lauren N.; Young, Julie; caitlin@robinandassociates.com; julie@robinandassociates.com; mark@robinandassociates.com |
| **Cc:** | AAA Shereen Gomez, Esq.; edward.zulkey@bakermckenzie.com; martin.scheinman@scheinmanneutrals.com; mwigmore@avalonconsultingllc.com; Sonia.Kaparakos@Scheinmanneutrals.com; joyce.franklin@bakermckenzie.com |
| **Subject:** | American Zurich Insurance Company v. Caton Park Nursing Home d/b/a Michael Melnicke - Case 02-20-0000-3948 |

---

**\*\* External Email -- Sender: prvs=68708c8b0c=shereengomez@adr.org \*\***

Dear Counsel,

Please note the Chair's Order below:

> Before the panel is Claimant's Motion for Pre-Hearing Security dated June 17, 2021. Having reviewed Claimant's motion, brief, exhibits and case authorities cited therein, as well as Respondents' Response to the motion, brief and exhibits submitted July 23, 2021, and Claimant's Reply and case authorities submitted July 30, 2021, and having had the opportunity to deliberate, the panel hereby rules as follows:
>
> 1. Within thirty (30) days of this Order, Respondent Melnicke Group must post pre-hearing security in the amount of $287,672, consistent with the terms of the insurance contract at issue in this matter.
> 2. The terms of the Letter of Credit should include a provision that prohibits either party from accessing the posted amounts without a specific order of this panel allowing such funds to be released.
>
> So Ordered.

Thank you,
Shereen

 **AAA Shereen Gomez, Esq.**
**Manager of ADR Services**

American Arbitration Association

T: 888 774 6955 F: 855 267 4082 E:
ShereenGomez@adr.org
13727 Noel Road, Suite 700, Dallas, TX 75240
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.