UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Zurich Insurance Company, | |
| Plaintiff, | Case No. 21-cv-4698 |
| v. | |
| Caton Park Nursing Home DBA Michael Melnicke, et al., | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Petitioner American Zurich Insurance Company filed a petition and motion to confirm [11] an arbitration award issued by an arbitration panel in its favor and against Respondents Caton Park Nursing Home, Regency Extended Management LLC, Hendon Gardens LLC, Park Nursing Home, Hempstead Park Nursing Home, Rockaway Care Center LLC, Providence Care Inc, and Yonkers Garden LLC. Respondents have opposed the motion and cross-moved to vacate the arbitration award. [23]. Petitioner has also moved for fees and costs under Federal Rule of Civil Procedure 4(d). [25]. For the reasons explained below, this Court grants Petitioner's motion to confirm [11], denies Respondents' cross-motion to vacate [23], and denies Petitioner's motion for fees and costs [25].

I. Background

   A. Subject Matter Jurisdiction

Initially, this Court addresses its jurisdiction over this matter. Petitioner brings this action under the Federal Arbitration Act (FAA) which authorizes it to petition this Court to confirm an arbitration award. *See Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022). The FAA's authorization of a petition, however, "does not itself create jurisdiction. Rather, the federal court must have what we have called an 'independent jurisdictional basis' to resolve the matter." *Id.* at 1314 (quoting *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). An independent jurisdictional basis exists if a petition to confirm arbitration shows that complete diversity exists, or in other words, "that the contending parties are citizens of different States (with over $75,000 in dispute)." *Id.* at 1316.

Petitioner is an Illinois corporation that also maintains its principal place of business in Illinois. [1] ¶ 1. Because a corporation takes the citizenship of both its state of incorporation and the state in which it maintains its principal place of business, 28 U.S.C. § 1332(c)(1), Petitioner is an Illinois citizen. Respondents Caton Park Nursing Home, Regency Extended Management LLC, Hendon Gardens LLC, Park Nursing Home, Hempstead Park Nursing Home, Rockaway Care Center LLC, Providence Care Inc, and Yonkers Garden LLC are all limited liability companies. [7] ¶¶ 2–9. Michael Melnicke and Leopold Friedman are the members of Respondents Yonkers Gardens LLC and Hendon Gardens LLC, and Melnicke is the sole owner of the remaining Respondent LLCs. *Id.* Both Melnicke and Friedman are New York

2

citizens. *Id.* ¶¶ 10–11. Because LLCs are citizens of each State in which its members are citizens, *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021), the Respondents are all New York citizens.

Based on the foregoing, complete diversity exists, as Petitioner is an Illinois citizen and Respondents are New York citizens. Additionally, Petitioner seeks to collect an arbitration award in the total amount of $287,672.00, exceeding the threshold amount in controversy requirement. [1] ¶ 18. This Court's jurisdiction to adjudicate Petitioner's motion to confirm arbitration is thus secure. *Badgerow*, 142 S. Ct. at 1316.

### B. Facts and History

On October 1, 2018, the parties entered into a "Paid Deductible Agreement" in connection with an insurance policy Petitioner issued to Respondents. [1] ¶ 13; [1-1]. The Agreement provides that any "dispute arising out of the interpretation, performance or alleged breach" of the Agreement will "be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules." [1-1] at 7. Under AAA Commercial Arbitration Rule 37, the "arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conversation of property and disposition of perishable goods" which "may take the form of an interim award."

After a dispute arose between the parties in February 2021, Petitioner demanded arbitration. [1] ¶ 15. Pursuant to the arbitration agreement, Petitioner appointed Edward Zulkey as an arbitrator; Respondents appointed Martin

3

Scheinman as an arbitrator; and Mark Wigmore served as umpire. *Id.* ¶ 16. In June 2021, Petitioner requested that the arbitrators order Respondents to post pre-hearing security for amounts Petitioner sought to collect through arbitration. *Id.* ¶ 17. Respondents opposed the request for pre-hearing security. *Id.* On August 24, 2021, the arbitrators overruled Respondents' objection and awarded Petitioner pre-hearing security in the total amount of $287,672.00, to be paid within thirty days. *Id.* ¶ 18; [1-2] at 2.

To date, Respondents have not tendered pre-hearing security. Petitioner has thus moved for an order confirming the August 24, 2021 award. [1]; [11]. In response, Respondents have opposed Petitioner's motion and have cross-moved to vacate the award. [23].

**II.   Legal Standard**

Petitioner seeks an order confirming its arbitration award under Section 9 of the FAA, which provides that a court "must" confirm an arbitration award unless it is "vacated, modified, or corrected as prescribed in Sections 10 and 11." 9 U.S.C. § 9. Section 10 lists grounds for vacatur, and Section 11 names those for modifying or correcting an award. 9 U.S.C. §§ 10, 11; *see also Hall*, 552 U.S. at 582.

Judicial review of arbitration awards "is tightly limited. Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (quoting *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020)); *see also Cont'l Cas. Co. v. Certain Underwriters at*

*Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021) (describing the "exceedingly narrow scope for judicial review of a final arbitral award"). Courts generally enforce arbitration awards so long as arbitrators do not exceed their delegated authority; this is "true even if the arbitrator's award contains a serious error of law or fact." *Standard Sec. Life Ins.*, 967 F.3d at 671 (quoting *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003)).

### III. Analysis

Petitioner has moved to confirm the August arbitration award, while Respondents have cross-moved to vacate the award arguing that the arbitrators exceeded their authority in awarding pre-hearing security. As discussed below, this Court will confirm the award because Petitioner has met the Section 9 requirements for confirmation and Respondents have failed to demonstrate that vacatur is warranted.

#### A. **Petitioner Meets Section 9 Requirements for Confirmation**

Petitioner meets the criteria for confirmation of the August arbitration award. Under Section 9, "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award . . . and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 9 also provides that if "no court is specified in the agreement of the parties, then such

application may be made to the United States court in and for the district within which such award was made." *Id.*

Here, Petitioner filed its petition to confirm on September 2, 2021, well within a year of the August 24, 2021 award. [1]. Moreover, the parties' Agreement provides that "Confirmation of the award may be entered in any court having jurisdiction," *see* [1-1] at 7, and this Court properly exercises diversity jurisdiction here. By statute, Petitioner has met the requirements for confirmation, so this Court "must grant" the petition unless it determines the award should be vacated, modified, or corrected. 9 U.S.C. § 9. Because Respondents raise arguments for vacatur, this Court will address them next.

### B. Vacatur is Inappropriate

Respondents move for vacatur of the award under FAA Section 10(a)(4), which applies where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); *see* [23]. A party seeking vacatur under Section 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). It is insufficient for Respondents to show that the arbitrators committed an error— even a serious error. *Id.* Rather, Respondents must demonstrate that the arbitration panel "deliberately disregards what [it] knows to be the law." *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 567 (7th Cir. 2015) (quoting *Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994)). Respondents argue that the

6

arbitrators exceeded their authority in granting Petitioner pre-hearing security in four ways.

First, Respondents argue that the arbitrators exceeded their authority because pre-hearing security amounts to punitive damages prohibited by the parties' Agreement. [23] at 9–10. This argument is meritless. To be sure, the Agreement bars arbitrators from awarding punitive damages; it states that the arbitrators "shall not . . . award damages in excess of compensatory damages under this Agreement. Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages." [1-1] at 7. But there is no authority for Respondents' argument that pre-hearing security constitutes punitive damages. Rather, these two remedies serve different purposes. Punitive damages serve to punish and deter, *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n.9 (1986); pre-hearing security, by contrast, is a temporary equitable order calculated to preserve assets, *Yasuda Fire & Marine Ins. Co. of Eur., Ltd v. Cont'l Cas. Co.*, 37 F.3d 345, 348 (7th Cir. 1994). Additionally, while the Agreement prohibits punitive damages, it incorporates the AAA Commercial Rules that expressly permit interim relief such as pre-hearing security. [1-1] at 7; *see* Am. Arb. Assoc., *Commercial Arbitration Rules and Mediation Procedures* (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf. By adopting the AAA Rules in their Agreement, Respondents "implicitly included the arbitrators' authority to grant an interim award—like the prehearing security at

issue." *Zurich Am. Ins. Co. v. Trendsetter HR, LLC*, No. 15 C 8696, 2016 WL 4453694, at *3 (N.D. Ill. Aug. 24, 2016).

This Court is also unpersuaded by Respondents' argument that the arbitrators exceeded their authority by granting interim relief because Petitioner failed to meet its burden of proving the necessity of such relief. *See* [23] at 6–7. This argument challenges the correctness of the arbitrators' fact findings and legal conclusions based on the record before them. Yet errors in the "arbitrator's interpretation of law or findings of fact do not merit reversal." *Eljer Mfg.*, 14 F.3d at 1254; *see Oxford Health Plans*, 569 U.S. at 569; *see also, e.g.*, *Nosbaum v. J.P. Morgan Sec. LLC*, No. 17 C 6202, 2018 WL 3626112, at *3 (N.D. Ill. July 30, 2018) ("A court may not interfere with an arbitrator's findings of fact merely because it disagrees with them, otherwise the purpose of arbitration proceedings as speedy and cost-effective dispute resolution options would be undermined."). The only question before this Court is whether the arbitrators exceeded their authority in granting pre-hearing security. *Oxford Health Plans*, 569 U.S. at 569. They did not. As stated, the Agreement (through incorporation of AAA Rules) authorized the arbitrators to impose pre-hearing security. The interim order granting pre-hearing security shows that both Petitioner and Respondents had opportunities to brief and argue their positions; the arbitrators reviewed both sides' briefs, case authorities, and exhibits, and deliberated before fashioning the pre-hearing security award. [1-2] at 2. The fact that the arbitrators "considered arguments from both sides before determining the appropriate amount of the prehearing security" also undermines the notion that they exceeded their powers.

8

*Zurich*, 2016 WL 4453694, at *3. Nor is vacatur warranted, as Respondents suggest, because the arbitrators did not "articulate any findings" when they rendered the pre-hearing security award. *Contra* [23] at 7. An "arbitrator is simply not required to state the reasons for his decision. Such a requirement would serve only to perpetuate the delay and expense which arbitration is meant to combat." *Eljer Mfg.*, 14 F.3d at 1254.

In moving for vacatur, Respondents also emphasize the merits of their defenses in the arbitration proceeding. They assert that the ultimate dispute in the parties' arbitration concerns whether Respondents breached a provision of the Agreement requiring them to provide Petitioner a letter of credit and post additional collateral upon Petitioner's request. [23] at 7–9. Respondents argue that Petitioner will not prevail in arbitration because the provision upon which Petitioner relies (which requires Respondents to tender the letter of credit and collateral) comes from an unsigned, unenforceable version of the Agreement, while the actual signed version of the Agreement omits that provision. *Id.* This is important, so the argument goes, because Petitioner's request for pre-hearing security also stems from the same provision, and thus, the arbitrators exceeded their authority by issuing a "premature award on one of the ultimate issues" of the case. *Id.* at 8. This Court disagrees. Although Respondents may ultimately be correct in proving to the arbitration panel that they owe no money to Petitioner under the Agreement, the interim relief is just that—interim. It serves to preserve Petitioner's "stake in the controversy" pending a full hearing on the merits. *Yasuda*, 37 F.3d at 351; *see also, e.g., See Certain*

9

*Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 939 (N.D. Cal. 2003) (confirming interim relief for the petitioner and analogizing interim relief to a preliminary injunction because the petitioner's "ultimate financial position was fully protected" pending a "final ruling on the substantive issue" in the case). Arbitrators do not exceed their authority by granting pre-hearing security even where the propriety of such interim relief is tied to the ultimate merits of the arbitration. *See Zurich*, 2016 WL 4453694, at *3 (confirming pre-hearing security award notwithstanding the respondent's argument that the award is unenforceable due to the invalidity of the parties' agreement, because the "arbitrators were not required to consider this type of merits questions when determining whether to issue the interim award"); *see also Yasuda*, 37 F.3d at 352 (affirming the confirmation of an arbitration panel's requiring interim security pending final arbitration and rejecting arguments that the panel erred in imposing the "proper amount" of security because "the arbitration panel will visit that same issue during arbitration of the ultimate dispute between the parties (the amount of money, if any, [the petitioner] owes [the respondent]").

Finally, Respondents contend that this Court must vacate the August 2021 award because it is not a final award, invoking Section 10(a)(4) which permits vacatur where arbitrators imperfectly executed their powers such that "mutual, *final*, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) (emphasis added); *see* [23] at 12. But the Seventh Circuit has instructed that pre-hearing security awards, while interim in nature, are considered "final" and "subject

10

to both confirmation and [vacatur] under the FAA." *Yasuda*, 37 F.3d at 349; *see also Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 230 F. Supp. 2d 362, 369 (S.D.N.Y. 2002) (observing that the Seventh and Ninth Circuits have "held that an arbitration panel's order requiring the posting of security to protect a possible final award is a 'final' award subject to judicial review") (first citing *Yasuda*, 37 F.3d at 347–48; then citing *Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991)). This Court thus possesses authority to confirm the arbitration award.

For these reasons, Respondents have not shown that vacatur of the August 2021 award is appropriate.

### C. Fees and Costs

Petitioner has moved for costs and fees incurred as a result of Respondents' failure to comply with its request to waive formal service of process. [25].

On September 2, 2021, Petitioner sent Respondents' counsel *in the arbitration*, Caitlin Robin, its petition and copies of the waiver of summons forms for the Respondents via email, stating: "Please let us know if you are authorized to execute the documents." [25-2] at 1–2. The next day, Ms. Robin responded: "Absolutely not." [25-1] at 1. After this exchange, on September 14, 2021, Petitioner moved this Court for an order directing service by the U.S. Marshal pursuant to Section 9 of the FAA which provides that, if the adverse party is a nonresident, then the arbitration petition "shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." [8]; 9 U.S.C. § 9. After

11

this Court entered an order allowing service via the U.S. Marshal *see* [9], summonses issued as to the various Respondents on September 15, 2021. It was not until October 8, 2021, when Respondents retained counsel, Davidoff Law Firm, to represent them in this federal action. [28] at 4. According to Davidoff Law Firm, Ms. Robin—the attorney to Petitioner directed its initial waiver of service request—does not represent Respondents in this federal action, and thus, does not have authority to accept on their behalf. [28] at 4. Once it entered the case, the Davidoff Law Firm obtained authorization from each of the Respondents to accept service, and thereafter advised Petitioner's counsel that Respondents would waive formal service. *Id.*; *see* [25-3]. By then, however, the formal summonses had already issued as to the Respondents.

Federal Rule of Civil Procedure 4(d)(1) provides that a defendant "has a duty to avoid unnecessary expenses of serving the summons" upon the plaintiff's request. Accordingly, the plaintiff can request that a defendant waive formal process; to do so, the plaintiff must send a notice and request in writing to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive services of process." Fed. R. Civ. P. 4(d)(1)(A). If a defendant "fails, without good cause" to comply with such a request, "the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. (4)(d)(2).

Petitioner requests the $706.61 it incurred in effectuating formal service after Ms. Robin refused to execute the waivers of summons and $4,247.60 in associated attorney's fees. [25] at 3; [25-4]. Based on the record, however, this Court does not find fees or costs appropriate. Petitioner made its request for waiver of service to Ms. Robin, who advised via email that she was *not* authorized to accept service on Respondents' behalf. Ms. Robin's representation of Respondents in the arbitration does not make her their agent for purposes of service of process in this federal action. *See Obot v. Citibank S.D., N.A.*, No. 04-CV-784A, 2006 WL 6905256, at *2 (W.D.N.Y. Oct. 17, 2006) (holding that an attorney's prior representation of a litigant did not make him its "agent . . . for purposes of service of process"), *aff'd*, 347 F. App'x 658 (2d Cir. 2009). Petitioner did not then ascertain the appropriate representative who Respondents would have authorized to waive formal service. Rather, it went ahead with formal service. In short, by failing to direct its email to the appropriate representative, Petitioner did not perfect its request for Respondents to waive formal service under Rule 4(d). Respondents thus bear no responsibility for associated fees and costs.

## IV. Conclusion

For the reasons explained above, this Court grants Petitioner's motion to confirm arbitration award [11], denies Respondents' cross-motion to vacate the arbitration award [23], and denies Petitioner's motion for fees and costs [25]. The Clerk is directed to enter judgment in favor of Petitioner and against Respondents. Civil case terminated.

E N T E R:

Dated: April 18, 2022

_____
MARY M. ROWLAND
United States District Judge

14